UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. CR-1-02-100-1 |
| Plaintiff, | : | Judge Rice |
| vs. | : | **DEFENDANT JOVANNI MANGOTTI'S SENTENCE MEMORANDUM** |
| JOVANNI MANGOTTI, | : | |
| Defendant. | : | |

Comes now the defendant, Mr. Jovanni Mangotti, by and through counsel, and hereby presents the Court this Sentence Memorandum. Mr. Mangotti first addresses the unresolved objections, and then he submits several requests for the Court's consideration.

**OBJECTIONS**

**Objection #1 (paragraphs 17, 18, 21)**

This objection is based on Mr. Mangotti's version of facts as to his involvement in stealing checks and inmate identities. The government bases its position as to what is written in the Superseding Indictment, and Mr. Mangotti bases his position on what is written in the Statement of Facts supporting his guilty plea. Mr. Mangotti respectfully requests the Court to adhere to the more detailed information provided in the Statement of Facts.

As to Paragraphs 17 and 18, Mr. Mangotti asserts that Daniel Patenande stole the Proctor and Gamble checks, and he gave them to Mr. Mangotti. The Indictment makes it look as if Mr. Mangotti stole the checks himself. Mr. Mangotti admits to receiving the stolen checks only. Please refer to the Statement of Facts, pp. 10-11, as well as what was stated on the record at the

June 28, 2004 plea hearing. (As the Court may recall, the Statement of Facts was amended on the record at the plea hearing.) The record at the plea hearing should reflect that "Mr. Mangotti as a co-conspirator received checks stolen from the mailboxes in furtherance of the conspiracy."

As to Paragraph 21, Mr. Mangotti did not "steal" any identities of any inmates as written in the second sentence. Mr. Mangotti "received" the inmate identities, stolen or otherwise. Please refer to the Statement of Facts, page 12, last two paragraphs.

While this objection is essentially a dispute over differences in court documents, Mr. Mangotti submits that the Court should accept the Indictment in its general form but adhere to the facts detailed in the record at the plea hearing and the Statement of Facts.

**Objection #2 (Paragraph 48)**

This objection involves Mr. Mangotti's alleged leadership role in the tax fraud case (Indictment Count 40). Notwithstanding the recent cases of *Blakely* and *Booker*,[1] the objection essentially is moot for Sentencing Guideline purposes because Mr. Mangotti admits his leadership role in the bank fraud case (Indictment Counts 1 and 22). As well, the Plea Agreement accounts for a two-point enhancement for Mr. Mangotti's leadership role.

Nevertheless, Mr. Mangotti maintains he was not the leader and organizer of the tax fraud scheme. Please refer to the Statement of Facts, page 12, as well as the amendments made to the Statement of Facts placed on record at the plea hearing on June 28, 2004.

---

[1] *Blakely v. Washington*, 542 U.S. ___ (2004), 124 S.Ct. 2531, 159 L.Ed.2d 403; *United States v. Booker*, 543 U.S. ___ (2005), 125 S.Ct. 738.

**Objection #3 (paragraphs 68, 69, 70, 71, 73, 76)**

This objection places in issue Mr. Mangotti's criminal history category. The Pre-Sentence Report places Mr. Mangotti in a criminal history category of VI, but Mr. Mangotti contends his history should be V.

<u>Paragraphs 68 and 69 should assess only 3 criminal history points, not 5.</u>

The theft case under Paragraph 68[2] and the felonious assault case under Paragraph 69[3] should be considered related and consolidated pursuant to U.S.S.G. § 4A1.2(a)(2). The two offenses are related because "they resulted from offenses that... (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing."[4] Both cases stem from Mr. Mangotti stealing from the victims' homes, and the sentencing court, in its docket entries, ordered consecutive sentences. Mr. Mangotti first addresses the issue of consolidation for trial and sentencing and then the common scheme or plan.

The government claims that this objection should be overruled because there was no formal order of consolidation for trial or sentencing in these two cases, yet it concedes the sentence hearing was held on the same day, February 28, 1992.

Mr. Mangotti has attached the court dockets in question for the Court's review.[5] In Ohio

---

[2] Theft, Cuyahoga County Common Pleas Court, Cleveland, OH, Case #CR-91-272106.

[3] Attempted Felonious Assault, Cuyahoga County Common Pleas Court, Cleveland, OH, Case #CR-91-270807.

[4] U.S.S.G. § 4A1.2 Application Note 3.

[5] Sentence Memorandum Attachments 1 and 2.

jurisdictions, "it is axiomatic that a court speaks through its docket and journals."[6] The dockets in these two cases show that the court *ordered* "trial set for February 3, 1992." Mr. Mangotti submits that if these cases had been tried, they would have been tried together on the date the court *ordered* them for trial. The dockets also show a plea hearing was held for both cases on February 19, 1992. More important, the dockets show both cases were consolidated for sentencing, and the court's sentence orders specifically cite each other's case for consecutive sentencing.[7]

Notwithstanding contrary case law in the Sixth Circuit,[8] the Seventh Circuit has recognized that cases may be "functionally consolidated even absent a formal order.[9] Cases may be deemed functionally consolidated when there is a showing on the record of the sentence hearing that the sentencing judge considered the cases sufficiently related for consolidation and effectively entered one sentence for the multiple convictions.[10] Mr. Mangotti submits that the

---

[6] *Oney v. Allen*, 39 Ohio St.3d 103, 107 (1988).

[7] For Case CR-91-272106, page 2 docket entry 2/28/92: "[i]t is therefore, ordered and adjudged by the court that said defendant, John F. Cobble [Jovanni Mangottii], is sentenced to Lorain Correctional Institution for a term of six (6) months and pay court costs. Sentence to run consecutive with sentence in CR # 270807.
    For Case CR-91-270807, page 2 docket entry 2/28/92: "[i]t is therefore, ordered and adjudged by the court that said defendant, John F. Cobble [Jovanni Mangottii], is sentenced to Lorain Correctional Institution for a term of three (3) years to ten (10) years and pay court costs. Sentence to run consecutive with sentence in CR # 272106.

[8] *E.g., U.S. v. Peter*, 98 Fed.Appx. 449 (2004).

[9] *U.S. v. Buford*, 201 F.3d 937, 940 (7th Cir. 2000), aff'd, 532 U.S. 59, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001); *see also U.S. v. Joseph*, 50 F.3d 401, 403-404 (7th Cir. 1995).

[10] *Id.*

docket entries prove the two cases are functionally related, and thus they should be consolidated for sentencing purposes in this case.

With regard to Mr. Mangotti's common scheme or plan, both cases are related because they are the result of Mr. Mangotti's theft binge of stealing "a VCR and stereo speakers [Pre-Sentence Report Paragraph 68]" and "taking property [Pre-Sentence Report Paragraph 69]" from the victims' homes. Notwithstanding intervening arrest dates of only one month, Mr. Mangotti plotted a common scheme or plan over a one month period encompassing both offenses. U.S.S.G. § 4A1.1 Application Note 6 specifically provides an example similar to Mr. Mangotti's objection: "a defendant's criminal history includes two robbery convictions for offenses committed on different occasions that were consolidated for sentencing... are treated as related."

Coupled with the consecutive sentences imposed on one sentence hearing date, this example dictates that these offenses are related. Accordingly, Mr. Mangotti should receive only 3 criminal history points for the offense under Paragraph 69, U.S.S.G. § 4A1.1(a), and no points for the offense under Paragraph 68, U.S.S.G. § 4A1.2(a)(2).

<u>Paragraphs 70 and 71 should assess only 2 criminal history points, not 4.</u>

The theft case under Paragraph 70[11] and the misuse of credit card case under Paragraph 71[12] should also be considered related and consolidated pursuant to U.S.S.G. § 4A1.2(a)(2). The two offenses are related because "they resulted from offenses that... (B) were part of a single

---

[11] Grand Theft, Cuyahoga County Common Pleas Court, Cleveland, OH, Case #CR-96-340703.

[12] Misuse of Credit Cards, Cuyahoga County Common Pleas Court, Cleveland, OH, Case #CR-96-336196.

common scheme or plan, or (C) were consolidated for trial or sentencing."[13]  Mr. Mangotti submits that the government is in error in its Paragraph 70 assertion that these cases are "not considered related... as they occurred on different occasions and were not consolidated for trial or sentencing,"

Mr. Mangotti was arrested for both offenses on the same date, February 16, 1996, as depicted in the Pre-Sentence Report.  Accordingly, there is no separate, intervening arrest as described in U.S.S.G. § 4A1.2 Application Note 3.

In support of his cause, Mr. Mangotti includes the docket entries as well as excerpts of the transcript of proceedings for this Court's review.[14]

The records of these two cases prove they were joined and consolidated for trial on September 26, 1006.  At page 3 of the transcript of proceedings[15], the following colloquy took place:

> THE COURT: We are here in CR 336196 and 340703, both cases captioned the state of Ohio verses John Duncan [Jovanni Mangotti], also known as John Cobble.  *Both of these cases have been joined for trial; is that correct.*
>
> MR TORRES [the prosecutor]: *Proceeding on both.*
>
> (Emphasis added.)

Mr. Mangotti can not make it any clearer that all parties considered both cases consolidated.  Whether "consolidated" as used in the Sentencing Guidelines or "joined" as used by the trial

---

[13]  "  U.S.S.G. § 4A1.2 Application Note 3.

[14]  Sentence Memorandum Attachments 3, 4 and 5.

[15]  Sentence Memorandum Attachment 5

court, both words have the same legal definition.[16] Further, the Seventh Circuit cases of *Buford* and *Joseph* apply.[17]

The docket entries show the court *ordered* trial for both cases on September 26, 1996. The docket entries show the court *ordered* its sentence for both offenses to have concurrent terms of imprisonment. Accordingly, the Sentencing Commission's example described under U.S.S.G. § 4A1.1 Application Note 6 also applies to this case.[18]

In sum, Mr. Mangotti was involved in a single, common theft scheme involving stolen checks and credit cards. All parties agreed the cases were consolidated, as shown in the transcript of proceedings. These facts coupled with concurrent sentences imposed on the same date dictate that these offenses are related.

Mr. Mangotti should receive only 2 criminal history points (not 4 points) for both offenses described in Paragraphs 70 and 71.[19]

Paragraphs 73 and 76 should assess at total of 8 criminal history points, not 12.

For the reasons described in this objection, Mr. Mangotti's due process rights under the

---

[16] Black's Law Dictionary 308 and 836 (6th ed. 1990)(emphasis added):

**Consolidate**. In a general sense, to *unite* or unify into one mass or body....

**Join**. To *unite*; to come together; to combine or unite in time, effort, action; to enter into an alliance.

[17] 201 F.3d 937, 940; 50 F.3d 401, 403-404.

[18] [A] defendant's criminal history includes two robbery convictions for offenses committed on different occasions that were consolidated for sentencing... are treated as related.

[19] U.S.S.G. §§ 4A1.1(b), 4A1.2(a)(2)

Fifth and Fourteenth Amendments to the United States Constitution are in Jeopardy. Mr. Mangotti submits his subtotal of criminal history points should be 8 and not 12, and his total criminal history should be 11 and not 15. This should place Mr. Mangotti in criminal history category V, and Mr. Mangotti respectfully requests the Court to consider category V for sentencing purposes.

### Objection #4 (paragraphs 78, 80, 84, 85 and 87)

This objection involves offender characteristics, including Mr. Mangotti's competency evaluation. Although the Pre-Sentence Report is based on the report prepared by the competency evaluation staff at the FCI-Butner facility, Mr. Mangotii maintains that report is inaccurate and wishes to make the record clear for this Court's consideration.

Regarding paragraph 78, Mr. Mangotti never told FCI-Butner evaluators that his mother was shot to death in 1987 or that his uncle sexually molested him. Mr. Mangotti never told evaluators he has four half sisters whom are his father's children. Contrary to the Forensic Evaluation dated October 7, 2003, page 2, these statements were never made by Mr. Mangotti. In fact, the report claims on page 2 that Mr. Mangotti was assessed to be an "unreliable historical informant." This Court should disregard these assertions in the competency report.

Regarding paragraph 80, Mr. Mangotti never told evaluators that Donna Galimbo died giving child birth. This is false and needs to be corrected.

Regarding paragraph 84, Mr. Mangotti never told evaluators at FCI about any treatment he received at Lake Shore Mental Health Institute for "symptoms of suspiciousness." Mr. Mangotti did not tell evaluators he was prescribed anti-depressants. Mr. Mangotti never said

anything remotely close to these allegations.  Accordingly, these statements should be disregarded, notwithstanding their origins from the Forensic Evaluation dated October 7, 2003, page 3, fourth full paragraph.

Regarding paragraph 85, Mr. Mangotti was never evaluated by any staff psychologist at USP-Atlanta.  He was held 10 days in a holding cell, and that is the extent of his stay in Atlanta.  This assertion should be disregarded, notwithstanding its origin from the Forensic Evaluation dated October 7, 2003, page 3, fourth full paragraph.

Regarding paragraph 87, Mr. Mangotti never told evaluators in Butner FCI that he denied using alcohol as described in the Forensic Evaluation dated October 7, 2003, page 3, fourth full paragraph.  This should be disregarded by the Court as well.

## DEFENSE REQUESTS

### Request for Recommendation of Detention Facility

Mr. Mangotti requests the Court to recommend placement of imprisonment as close to home as possible.  Further, Mr. Mangotti wants to make the Court aware that his life may be in danger while serving at a federal penitentiary.

Paragraph 83 of the Pre-Sentence Report describes how Mr. Mangotti was assaulted on July 12, 2004 by other inmates at the Grant County, Kentucky jail.  While detained in this case, Mr. Mangotti was severely beaten by other inmates, including other federal prisoners.  A television was smashed on his head and face.  Mr. Mangotti suffered a broken nose and wrist as a result of this incident, along with severe cuts and bruises on his face and neck.  Mr. Mangotti believes he was targeted by inmates for alleged cooperation with government authorities.

Mr. Mangotti asks this Court to recommend sending him to a facility where there are no other inmates who assaulted him. Defense counsel has attempted unsuccessfully to retrieve a listing of all other federal prisoners who were at Grant County Jail when the assault occurred. Defense counsel has requested such a listing from Mr. Mangotti's civil rights attorney representing him in the assault, but to this date a listing has not been provided. Though this request may seem unusual, Mr. Mangotti simply asks the Court to do whatever it can within its powers.

**Request the Sentence Order name Jovanni Mangotti as the Defendant**

On Page 2 of the Pre-Sentence Report, the legal name for the defendant is Jovanni Mangotti. Despite the aliases used in the past, Mr. Mangotti requests the Sentence Order of the Court to reflect his legal name, Jovanni Mangotti.

Respectfully submitted,

/s/ Kevin J. Spiering
Kevin J. Spiering
119 East Court Street
Cincinnati, Ohio 45202
(513)381-1500

Trial Counsel for Defendant Jovanni Mangotti

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served electronically to the office of the United States Attorney and counsel for co-defendant on this 13th day of June, 2005.

/s/ Kevin J. Spiering